**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Scott HILL and Thomas Leroy
Leonard, Defendants-Appellants.**

**No. 27804.**

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1970.

Rehearing Denied Sept. 22, 1970.

Ray Sandstrom, Sandstrom & Hodge, Fort Lauderdale, Fla., for appellants.

Robert W. Rust, U. S. Atty., Neal R. Sonnett, Michael J. Osman, Asst. U. S. Attys., Miami, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

Appellants were convicted, following a non-jury trial, of smuggling 81 cases of liquor into the United States in violation of 18 U.S.C. § 545. On appeal they contend: (1) The district court erred in failing to suppress the liquor which they allege to have been seized following an unconstitutional search. (2) The court erred in admitting a conversation between the agents and appellants after appellants were effectively in custody but before they had been advised of their rights. (3) Requesting the appellants to produce a customs receipt violated their privilege against self-incrimination. We affirm the convictions.

In May of 1968 a United States customs agent received a report that the

vessel "Black Cloud" [1] had been observed in Bimini taking on a cargo of liquor. Subsequently, the vessel was observed by several customs agents in or about the Coral Ridge Marina in Pampano Beach, Florida. On at least two occasions a truck was seen leaving the moored vessel. On 31 July 1968, customs agents received a report that the "Black Cloud" had left the marina prior to 9:30 that morning. About 3:15 a. m. on 1 August 1968, some eighteen hours later, a group of agents saw the vessel re-enter the Intracoastal Waterway through the Hillsboro Inlet. It tied up at a seawall away from its usual moorings at the edge of the marina. A white Chevrolet panel truck backed up to the vessel and the agents observed boxes being unloaded from the boat and loaded into the truck. When the truck was loaded the "Black Cloud" returned to its normal docking place and the truck departed.

A group of customs agents in four vehicles followed the white panel truck as it left the marina and turned south on North Federal Highway (U.S. 1). About two miles from the marina the agents caused it to stop by using a siren. Approaching the truck from the front, some of the agents could see into the cargo area of the van where numerous boxes were stacked.[2] The agents placed appellants, the only occupants of the vehicle,[3] under arrest for smuggling. A thorough examination of the contents of the van revealed some 81 cases of various liquors, none of which bore the appropriate tax stamps.

Appellants moved the district court to suppress as evidence the seized liquor, on the ground that it was the fruit of an unconstitutional search. The search in question was conducted without a warrant and without the consent of appellant Hill, the owner of the truck. Following a hearing, the district court concluded that there was not sufficient probable cause for the search, but that it was nonetheless a valid "border search". It consequently denied the motion to suppress.

Under 19 U.S.C. § 482, customs agents are authorized to search any vehicle or person they reasonably suspect to be carrying merchandise illegally introduced into the United States.[4] These "border searches", though subject to the constitutional standard of reasonableness, have been uniformly upheld by the courts absent the normal requirements of a search warrant or the existence of probable cause.[5] The reasonable sus-

---

1. The "Black Cloud" is a vessel of some 36 feet in length with a 12 foot beam. It was equipped for fishing and registered in the name of appellant Hill.

2. The cases were marked "Bahamas" and indicated that they contained 40-ounce bottles.

3. Hill was driving the truck and Leonard was in the passenger's seat.

4. 19 U.S.C. § 482, provides:
   Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial.

5. United States v. Tsoi Kwan Sang, 416 F.2d 306 (5th Cir. 1969); Walker v. United States, 404 F.2d 900 (5th Cir. 1968); Thomas v. United States, 372 F.2d 252 (5th Cir. 1967); Valadez v. United States, 358 F.2d 721 (5th Cir. 1966); Marsh v. United States, 344 F.2d 317, 324 (5th Cir. 1965); Mansfield v. United States, 308 F.2d 221 (5th Cir. 1962). See Comment, Border Searches and the

picion of a customs agent is sufficient to authorize a "border search".

In the present case appellants contend that the search of the truck cannot qualify as a "border search" inasmuch as there is no evidence that the "Black Cloud" crossed an international boundary on the dates in question. They point out that the agents first viewed the vessel as it entered the Intracoastal Waterway, and that no one had actually seen it cross the international boundary lying three miles out at sea. Appellants argue that a showing of a border crossing is an indispensable, primary element of a "border search". We cannot agree. The extraordinary deference accorded this unique category of searches is based on a recognition of the difficulty involved in effectively policing our national boundaries.[6] The facts of the present case dramatically illustrate the burden we would be placing on the officers charged with this responsibility, were we to accept appellant's position.

In United States v. Glaziou,[7] the Second Circuit upheld the search of two French seamen as they were leaving the pier where their vessel was docked. In considering the seamen's argument that they were not subject to a "border search" since the customs officers had no grounds to believe that they were enter-ing, or had recently entered, this country, the court stated:

The class of persons who may be subjected to a border search is not limited to those suspected persons who are searched for contraband upon first entering the United States. Also included in the class are persons who work in a border area when leaving the area;[8] persons engaged in suspicious activity near border areas;[9] and, in some situations, persons and vehicles after they have cleared an initial customs checkpoint and have entered the United States.[10] Therefore, we hold that when an individual has direct contact with a border area,[11] or an individual's movements are reasonably related to the border area,[12] that individual is a member of the class of persons that a customs officer may, if his suspicions are aroused, stop and search while the individual is still within the border area.[13]

We believe that Glaziou states the proper rule. The facts of the present case demonstrate that appellants were within the class of individuals subject to a "border search", that the customs agents had a reasonable suspicion that they were in possession of unlawfully imported merchandise, and that the search was conducted within a border area. Consequently, the district court properly de-

Fourth Amendment, 77 Yale L.J. 1007 (1968).

6. Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967).

7. 402 F.2d 8 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969).

8. See United States v. McGlone, 394 F.2d 75 (4th Cir. 1968); cf. United States v. Yee Ngee How, 105 F.Supp. 517 (N.D. Cal.1952).

9. Cf. Lannom v. United States, 381 F.2d 858 (9th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968); Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9th Cir. 1967).

10. E. g. King v. United States, 348 F.2d 814 (9th Cir.), cert. denied, 382 U.S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965); Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959); Murgia v. United States, 285 F.2d 14 (9th Cir. 1960), cert. denied, 366 U.S. 977, 81 S.Ct. 1946, 6 L.Ed.2d 1265 (1961).

11. See United States v. McGlone, 394 F.2d 75 (4th Cir. 1968); Mansfield v. United States, 308 F.2d 221 (5th Cir. 1962).

12. Cf. e. g., Lannom v. United States, 381 F.2d 858 (9th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968).

13. 402 F.2d at 13–14 (citations in the quoted text appear as footnotes 8–12 of the present opinion).

nied the motion to suppress the use of the seized liquor as evidence.

 Immediately after the customs agents stopped the truck but before they had administered *Miranda* rites to the appellants, one of the agents asked appellant Hill what he had in the truck. Hill replied, "You know what it is. It's liquor." Appellants were also asked if they had a customs receipt, to which there was no reply. Appellants contend that the court erred in finding that these exchanges were not the sort of custodial interrogation envisioned by Miranda v. Arizona,[14] and admitting them into evidence. However, even if the court committed error in this regard, it was, beyond a reasonable doubt, harmless error.[15] These statements could have some bearing on the case in two ways: as providing a basis for suspicion which would authorize a "border search", or as they might relate to the issue of guilt. The district court stated:

> I think, however, that even if these statements are not properly admitted, that there is sufficient evidence before the Court under which the Government agents would be justified in having a suspicion that merchandise in violation of Customs laws was in the truck.

We agree that the statements were not necessary to the validity of the search. Accepting the validity of the search, and remembering that this was a non-jury trial, it may not be seriously maintained that the statements affected the district court's finding of guilt.

 Finally, appellants contend that the inquiry regarding the customs receipt, or the requirement that they obtain a customs receipt, in some way violated their privilege against self-incrimination. This argument is plainly meritless. We are unable to perceive the analogy to Marchetti v. United States,[16] Grosso v. United States,[17] and Haynes v. United States,[18] suggested by appellants.

The judgment is affirmed.

---

14. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

15. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman* the Court stated:
   We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. 386 U.S. at 23, 87 S.Ct. at 827.
   28 U.S.C. § 2111 provides:
   On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.
   Fed.Rule Crim.Proc. 52(a) provides:
   Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

16. 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

17. 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

18. 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).