**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerome REAGOR and Wesley Lee Williams, Defendants-Appellants.**

**No. 29532.**

United States Court of Appeals, Fifth Circuit.

April 19, 1971.

Rehearing Denied and Rehearing En Banc Denied June 25, 1971.

---

Pat E. Dwyer, Robert E. Kennedy, El Paso, Tex., for defendants-appellants.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Romualdo Cesar Caballero, Atty., Tax Division, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before COLEMAN, SIMPSON, and RONEY, Circuit Judges.

COLEMAN, Circuit Judge:

In the Pecos Division of the United States District Court for the Western District of Texas, Jerome Reagor and Wesley Lee Williams were indicted in three counts and convicted by a jury of (1) conspiracy to receive, conceal, and facilitate the transportation and concealment of 9 grams of heroin, (2) receipt, concealment, and the facilitation of the transportation and concealment of the heroin, and (3) importation of the heroin, all in violation of § 174 of Title 21 U.S.C. The sole issue on appeal is the validity of a search near Marfa, Texas, which yielded the heroin introduced in evidence against the appellants at the trial below. We affirm.

On February 4, 1969, accompanied by a female co-defendant who was also convicted but has not appealed, Reagor and Williams set out from Dallas, Texas, to Ojinaga, Chihuahua, Mexico. They were traveling in a 1966 Buick, towing a Rambler. They went by Odessa, Texas, where they met another co-defendant, Jose Angel Marrufo, who entered a plea of guilty to a lesser included offense and is not before us on appeal. All of the indictees were addicted to the use of heroin and there was testimony that they often resorted to its use during the time involved in this litigation.

On February 5, 1969, Reagor and Marrufo crossed the international border at Presidio, Texas, headed for Ojinaga, traveling in the Rambler. On the outward bound journey Marrufo registered as a drug addict.[1] The purpose was to contact one Pedro Mendoza, a narcotics runner. Williamson and the girl remained behind at a motel in Presidio.

The next day, both men recrossed into the United States at Presidio, but a thorough search failed to reveal narcotics either on their persons or in the Rambler. A deputy sheriff followed them away from the check point and observed them as they drove directly to the El Charro Cafe. There the appellants met two men, one of whom was Mendoza, who had arrived by taxi and who drove away in the Rambler. The deputy did not know Mendoza. Reagor and Marrufo then walked to a point near the motel occupied by their associates, where they re-entered the 1966 Buick, occupied by Williams and the above mentioned female companion. The 1966 Buick was then seen to drive out of Presidio, headed toward Marfa, on the only feasibly available highway between Presidio and that point, sixty miles away. This highway traversed a desolate and generally uninhabited territory. The deputy, who regularly worked in co-operation with Customs officers, then telephoned the sheriff at Marfa and told him to be on the lookout for the 1966 Buick occupied by Reagor, Williams, Marrufo, and the woman.

---

1. Marrufo had been convicted of the possession of marijuana in Del Rio in 1960, for which he served five years. He was convicted in 1964 at Odessa for the possession of heroin. He was convicted at Midland in 1967 for the possession of heroin. He testified that his habit cost him thirty or forty dollars a day, which he supported by barbering and shoplifting.

The sheriff, accompanied by two Texas Highway Patrol and an Immigration and Customs Patrol Inspector, drove outside Marfa on U. S. Highway 67, where they encountered and stopped the 1966 Buick and its occupants at about 10:10 o'clock, p. m., February 6, 1969. A search of the 1966 Buick resulted in the location of the 9 grams of heroin concealed below an ash tray located by the left rear seat of the vehicle.

The appellants say that this search neither qualified as a border search nor did it meet the requirements of probable cause.

The appellants were indicted on February 24, 1969. The trial began August 18, 1969. There had been no motion filed by retained counsel to suppress the seized heroin as provided by Rule 41(e) of the Federal Rules of Criminal Procedure, Title 18 U.S.C. This failure may have been, at least it could have been, caused by the special problems encountered in efforts to represent narcotic addicts. The testimony showed, for example, that on the way from Presidio back to Marfa the parties stopped at a ghost town, where each took two injections of heroin. Williams took too much and was "out cold" for a considerable period of time.

Defense counsel attempted to make a motion to suppress after the trial had begun. This the court, in the exercise of its discretion, rejected as untimely. The rejection is of no real significance, however, because all of the facts surrounding the search near Marfa were thoroughly developed in the course of the proof for the prosecution and defense, as a consequence of which we are left in no doubt that this was a valid border search, leaving the appellants no room to complain of the introduction of the heroin at the trial below.

First, we are of the view that the search at Marfa imposed no "unreasonable elasticity" on the border, Marsh v. United States, 5 Cir., 1965, 344 F.2d 317, 324. Reagor and Marrufo, one of them a registered addict, had left and returned to the Country at Presidio. They had rejoined their companions at Presidio. The nearest town, although sixty miles away, was Marfa. Marfa could be reached by only one highway, the one by which these appellants left town at a point beyond a junction that led to an unimproved, extremely bad, road by which one conceivably could ultimately have reached Marfa. Under these circumstances, the distance to Marfa was of no legal border search significance.

It was held in *Marsh*, supra, that if the Customs agents had any reason for a search, even though not ordinarily measuring up to probable cause, a distance of sixty-three miles from the border under the circumstances of that case might not have stretched a border search beyond the breaking point. The search in *Marsh* was held invalid because the government failed to show "the circumstances known to the officers at the border which reasonably justified the request relayed to officers in the interior", 344 F. 2d 325.

It is true that in the attitude in which this case was tried, the deputy sheriff who called ahead to Marfa, and the sheriff who received the call, were not permitted to testify as to the details of what the deputy told the sheriff, other than to be on the lookout for the individuals and the automobile involved. The record does show, however, that the deputy regularly worked in close co-operation with the Customs officers. He knew that a registered addict and his companion had returned to this Country, had gone directly to a rendezvous with two individuals, had surrendered the car in which they had traveled to and from Mexico, had immediately made contact with those who originally came with them to Presidio, and afterwards took off in the night through a desolate territory, where no town and no officer would ordinarily be encountered for a space of sixty miles. This was a far cry from rendering "travelers who had recently entered this country subject to almost unlimited arrest and search without any cause save the simple request of a border officer to one at an in-

terior point", *Marsh*, supra, 344 F.2d at 325.

In United States v. Hill, 5 Cir., 1970, 430 F.2d 129, 131, we held that the reasonable suspicion of a Customs agent is sufficient to authorize a border search.

In *Hill*, supra, we quoted with approval from United States v. Glaziou:[2]

"The class of persons who may be subjected to a border search is not limited to those suspected persons who are searched for contraband upon first entering the United States. Also included in the class are persons who work in a border area when leaving the area; * * * persons engaged in suspicious activity near a border area; * * * and, in some situations, persons and vehicles after they have cleared an initial customs check-point and have entered the United States. Therefore, we hold that when an individual has direct contact with a border area, * * * or an individual's movements are reasonably related to the border area, * * * that individual is a member of the class of persons that a customs officer may, *if his suspicions are aroused* (emphasis ours), stop and search while the individual is still within the border area."

We think that these standards justified the search here in issue and that the appeal must accordingly fail.

The judgment of the District Court is

*Affirmed.*

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

2. 402 F.2d 8 (2d Cir., 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969).