UNITED STATES of America,
Plaintiff-Appellee,

v.

George Ray STEINKOENIG,
Defendant-Appellant.

No. 73-2802

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1973.

Rehearing Denied Dec. 19, 1973.

---

* Rule 18, 5 Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Thomas G. Sharpe, Jr., Brownsville, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant was convicted on a three-count indictment charging that he conspired to import 190 pounds of marijuana, imported the marijuana, and possessed it with intent to distribute, in violation of 21 U.S.C. § 963, 21 U.S.C. § 952(a), and 21 U.S.C. § 841(a)(1). On appeal he challenges the admissibility of the 190 pounds of marijuana and other evidence. We affirm his conviction on the basis that the marijuana was found

in a valid border search, and the other materials' admission was harmless error.

On January 25, 1972, customs agents received a tip that four white males staying in the Brownsville, Texas, Rodeway Inn were in the area for the purpose of buying narcotics. That afternoon the agents placed appellant and three companions under surveillance. Their efforts were soon rewarded.

Suspects Fuller, Seals and Steinkoenig left their motel and entered Mexico at about 6:00 p. m. When their car returned to the United States at 11:00 p. m., driver Seals was the lone occupant. After a fifteen-minute stop at the motel, Seals left in a van with Newell, who had stayed behind while the others went to Mexico. Customs agents followed the van six miles to an area near the Rio Grande River; the van stayed by the river until it returned to the motel at 3:00 a. m. the next morning.

Shortly after the van arrived back at the motel, agents surrounded it and informed Newell, by this time the sole occupant, that he was under arrest. His first response was to brandish a rifle but, upon further reflection, he put it down, left the van and surrendered. Agent Nicko then searched the van; other agents entered the motel room to search it and arrest the other three suspects.

When Agent Nicko entered the van he found five burlap sacks on the floor. He opened them and found, in all, 190 pounds of marijuana. Also in the van were 2,850 seconal pills. Agents searching the motel room found six and one-fourth ounces of marijuana, one and three-fourths ounces of marijuana seed, fifteen partially smoked marijuana cigarettes, amphetamines and four smoking pipes.

■ Appellant's first point of error is that the 190 pounds of marijuana was the product of an unconstitutional search and therefore inadmissible. We believe that Nicko's search of the van should be measured by border search standards. It is true that the vehicle searched had not crossed a border, but this Circuit has decided that a border crossing is not the *sine qua non* of a valid border search. In United States v. Hill, 5th Cir. 1970, 430 F.2d 129, the court adopted the Second Circuit rule that

. . . when an individual has direct contact with a border area, or an individual's movements are reasonably related to the border area, that individual is a member of the class of persons that a customs officer may, if his suspicions are aroused, stop and search while the individual is still within the border area.

430 F.2d 129 at 131. *See* United States v. Glaziou, 2d Cir. 1968, 402 F.2d 8, cert. denied, 1969, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126. *See also* United States v. Salinas, 5th Cir. 1971, 439 F.2d 376. In *Hill* the court used the rule to validate the warrantless search of a panel truck that had taken on a load of smuggled liquor from a docked ship when there was no showing that the vessel had recently crossed an international boundary. In the instant case the van driven by Seals and Newell came in direct contact with the border when it parked by the Rio Grande in the early morning hours of January 26, 1972. Therefore when Agent Nicko searched the van [1] soon after its return from its riverside parking place, he was conducting a border search even though the van had not crossed a border.

■ The search does not lose its border status simply because it took place six miles from the Rio Grande. In United States v. Warner, 5th Cir. 1971, 441 F.2d 821, cert. denied, 404 U.S. 829,

---

1. Opening the bags, like searching the van, can be analyzed in border search terms. Nicko was justified in opening them if he had a reasonable suspicion that they contained a substance being transported in violation of the customs laws. 19 U.S.C.A. § 482; United States v. McDaniel, 5th Cir. 1972, 463 F.2d 129, 134. We believe the same factors that gave him reasonable suspicion to search the van also justified his opening the bags.

92 S.Ct. 519, 17 L.Ed.2d 439, this court said:

> Therefore when Customs agents choose to conduct a border search outside the immediate vicinity of a border crossing point, the legality of the search will usually depend upon such factors as the distance of the search from the crossing point, the time elapsed since crossing, and the circumstances upon which the agents base their suspicions.

441 F.2d 821 at 833. *See also* Alexander v. United States, 9th Cir. 1966, 362 F.2d 379, cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439. In the instant case the search occurred six miles from the border, fifteen minutes after border area contact, and upon the basis of an informer's tip and close surveillance. These circumstances create a nexus with the border that is sufficient to make this a border search.[2] *See also* United States v. Martinez, 5th Cir. 1973, 481 F.2d 214; United States v. Maggard, 5th Cir. 1971, 451 F.2d 502, cert. denied, 405 U.S. 1045, 92 S.Ct. 1330, 31 L.Ed.2d 587; Thomas v. United States, 5th Cir. 1967, 372 F.2d 252.

■■ Probable cause is not required to initiate a border search; we must approve Agent Nicko's search if we conclude he had reasonable suspicion to believe the van contained contraband. *See* United States v. Martinez, *supra*; United States v. Thompson, 5th Cir. 1973, 475 F.2d 1359; Annot., 6 A.L.R.Fed. 317. We believe the events in this case would arouse a custom agent's reasonable suspicion. There was an informant's tip, followed by a surveillance period in which agents observed three suspects enter Mexico. Only one returned, and he quickly departed for the Rio Grande after picking up a companion and changing vehicles. He returned to the motel at 3:00 a. m. after being parked by the border for more than two hours. Such activity could easily foster the suspicion that two persons remained in Mexico to smuggle contraband across the Rio Grande after dark. Consequently we conclude the 190 pounds of marijuana was properly admitted as the product of a valid border search.

■ Appellant next challenges the trial court's decision to admit other drugs and paraphernalia to show appellant's "intent." Challenged here are the seconal pills in the van and the sundry small quantities of narcotics and paraphernalia found in the motel room. We believe that any error the trial court may have committed in admitting these materials was harmless.

There are two tests for harmless error, and we make the choice by asking whether the error rises to constitutional dimensions. 8A Moore's Federal Practice ¶ 52.02 [2]. Any error committed in admitting the seconal pills would not have affected appellant's constitutional rights, for we have already determined that Agent Nicko conducted a valid border search of the van, and that search produced the seconal pills. The proper objection to their admission would be either that they were irrelevant, or that they had slight probative value that was outweighed by their prejudicial effect. In fact, the pills arguably were evidence of "other crimes" that should have been excluded unless its admission would "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, Handbook of the Law of Evidence 448 (2d ed. 1972). They certainly were not probative of appellant's "intent" as the trial court be-

---

2. This strong nexus with the border and the agents' reasonable suspicion of wrongdoing distinguish this case from Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, in which the Court invalidated the Border Patrol's search of a car twenty-five miles north of the Mexican border. The officers in that case had no reason to be-

lieve the car had been in contact with the border and no reasonable suspicion that it contained contraband or aliens; they had stopped it routinely as part of their roving patrol. The search in the instant case is not the sort of routine search limited by *Almeida-Sanchez.*

lieved. However, even if the pills were admitted erroneously, the error was harmless.

In Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557, we find the test for determining whether a nonconstitutional error is harmless.

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764–765, 66 S.Ct. at 1248. *See also* United States v. Fischetti, 5th Cir. 1971, 450 F.2d 34, cert. denied, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478; United States v. Cohen, 5th Cir. 1969, 418 F.2d 68; Ahlstedt v. United States, 5th Cir. 1963, 315 F.2d 62, cert. denied, 375 U.S. 847, 84 S.Ct. 101, 11 L. Ed.2d 74. Applying this test to the case at hand, we note that the seconal pills had no direct bearing on the issue of whether appellant conspired to import, imported, or possessed with intent to distribute 190 pounds of marijuana. It is inescapable, of course, that admission of the seconal must have prejudiced appellant in the jury's eyes and permitted them to infer that one who possessed large quantities of seconal was a "bad man" who would import marijuana. On the other hand the properly admitted evidence against appellant and his colleagues was formidable. Agents testified that they had received an informant's tip and had conducted close surveillance of the suspects; they also chronicled the suspects' suspicious behavior. As the final blow the prosecution introduced 190 pounds of marijuana. The weight of the evidence properly admitted, we conclude, removes any possibility that the seconal pills had a substantial influence on the jury. *See* United States v. Bankston, 5th Cir. 1970, 424 F.2d 714.

A stricter test of harmless error must be applied if the error affected appellant's constitutional rights. Arguably the warrantless motel room search violated *Steinkoenig's* Fourth Amendment rights. It could not have been a valid border search because the statute authorizing the agents' search permits warrantless searches of a "vehicle, beast or person"—not a residence.[3] The search may have been incident to a lawful arrest if it was confined to an area within arrestees' immediate control, but the record is silent on that point. While authorities may search a limited area incident to arrest, they may not search through "closed or concealed areas in the room itself." Chimel v. California, 1969, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685. The

---

3. "Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."
19 U.S.C.A. § 482.

**230**

record does not disclose the extent of the motel room search. Thus we have too little information to validate this search as one incident to arrest.

 Assuming *arguendo* that the agents' room search was unconstitutional, we determine whether the court's error was harmless by asking whether we can "declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705. The Court has found harmless error of the constitutional variety where the tainted evidence did little to prove a defendant's guilt and the valid evidence against him was strong. Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. We perceive this case to be similar to *Harrington*. If in fact the search was invalid, the improperly admitted evidence consisted of small quantities of marijuana and amphetamines, fifteen marijuana cigarettes, and four smoking pipes. None of this material is probative on the issue of whether appellant imported 190 pounds of marijuana that lay in five sacks on the van floor. It shrinks into insignificance when compared with the properly admitted marijuana found in the van. Therefore we conclude that any error in admitting the fruit of the motel search was harmless beyond a reasonable doubt. *See* United States v. Bankston, *supra*.

 Appellant's last contention is that the trial judge's reasonable doubt instruction was tainted by his prefatory

remark, "It is rarely possible to prove anything to an absolute certainty." [4] We disagree. In reviewing a reasonable doubt instruction we examine the whole instruction, not one sentence taken out of context. Baker v. United States, 5th Cir. 1969, 412 F.2d 1069. Our review of the instruction convinces us that it conveyed the proper idea; its theme is similar to that of an instruction held not incorrect in Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.[5]

Affirmed.

---

4. In regard to reasonable doubt the trial court instructed the jury as follows:

Now what is a reasonable doubt? A reasonable doubt is a fair doubt, based upon reason and common sense, and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the most important of your own affairs. A reasonable doubt may arise in your mind not only from the evidence adduced but also from the lack of evidence, and since the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged,

a defendant has a right to rely upon the failure of the government in the prosecution to establish such proof. . . .

A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence, you, the jurors, do not feel convinced to a moral certainty that a defendant is guilty of the charge.

5. In *Holland* the trial judge said reasonable doubt was "the kind of doubt which you folks in the more serious and important affairs of your own lives might be willing to act upon." 348 U.S. at 140, 75 S.Ct. at 138.