Riley Ray FULTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. B14-81-479-CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 11, 1982.

Discretionary Review Refused
June 16, 1982.

Jay Burnett, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

SAM ROBERTSON, Justice.

The jury rejected appellant's plea of not guilty, found him guilty of aggravated robbery, and found he had twice previously been convicted of a felony; the punishment is life. We affirm.

Appellant does not challenge the sufficiency of the evidence. It will, therefore, be summarized only briefly to better understand appellant's contentions on appeal. It is undisputed that at approximately noon on May 8, 1978, the appellant, brandishing a double barrel sawed-off shotgun, and another person, who was masked and brandishing a large pistol, entered the Texas Independent Bank in Pasadena, Texas and by force and threats took some $23,462. The robbery took less than five minutes, and the robbers were seen leaving the bank in a yellow and black Ford automobile, found moments later with the motor still running on a parking lot approximately two blocks from the bank. Fingerprints of appellant were recovered from the automobile. Appellant's girlfriend testified that he came to the apartment where she was "a little after noon," showed her a "sack full of money" and told her he had just robbed a bank on Red Bluff. Finally, the evidence shows that the Texas Independent Bank was the only bank then on Red Bluff. Appellant presented no evidence.

Following the finding of guilt, evidence was presented to the jury that, between 1961 and 1974, appellant was convicted in eight separate cases of felonies including

attempted robbery, theft, burglary, and forgery. In addition, evidence was presented to the trial judge, not in the presence of the jury, of a drug offense and yet another felony. Finally, appellant testified, in proceedings before the court, of yet another conviction for bank robbery in Des Moines, Iowa.

In his first ground of error, appellant contends that the trial court erred in permitting him to represent himself at numerous pre-trial motion hearings.

The docket sheet informs us that a felony complaint was filed against appellant on September 29, 1978, charging the commission of this offense, and a probable cause hearing was set for the next day. On that day it was determined that appellant had already been returned to the Texas Department of Corrections; the case was set for presentation to the grand jury on October 16, 1978, and arraignment was set for October 25, 1978, when it was re-set for December 1, 1978. Appellant was returned from the Texas Department of Corrections and appeared in court on December 18, 1979. He was without counsel and even though appellant protested the appointment of counsel, the cautious trial judge appointed Mr. Sam Dick, an attorney with extensive experience in the trial of criminal cases, to represent appellant. However, in the order appointing counsel, Mr. Dick, with the court's acquiescence, modified the phrase "hereby appointed to represent" the defendant by striking out the word "represent" and inserting the word "advise." The matter was then set for a hearing on motions for January 18, 1980 and trial on January 25, 1980. Between December 18 and January 9, 1980, appellant, acting as his own counsel, filed the following motions:[1] (1) Motion to Produce Personal Papers; (2) Motion to Have Access to Library and Typewriter; (3) Motion for Production of Incarcerated Witnesses at the Expense of the State; (4) Amended Motion for Production of Incarcerated Witnesses at Expense of State; (5) Motion to Inspect Grand Jury Minutes; (6) Motion for Bench Warrant;

1. We retain appellant's original headings.

(7) Motion to be Recognized in Self-Representation; (8) Motion to Raise Defense of Mental Defect; (9) Motion for Incarcerated Witnesses to be Lodged Together in the Harris County Rehabilitation Center; (10) Motion for Adequate Notification and Preparation of Defense; (11) Motion for Discovery and Inspection; (12) Motion to Direct Court Reporter to Transcribe all Testimony of Motion Hearings, Bench Conferences, Conferences in Judge's Chamber, Voir Dire Examination of the Jury and all Final Arguments; (13) Motion for Production of Witnesses at the Expense of the State; (14) Motion for Extension of Time in Preparing and Filing Pre-Trial Motions.

Apparently, appellant did not appear in court on January 18, but did appear in court on January 23, when the case was re-set for trial from January 25, 1980 to February 25, 1980. He again appeared in court on January 28, 1980 for a pre-trial motion hearing, at which time the judge heard appellant's motion to be "recognized in self-representation" and, after a lengthy colloquy with appellant, granted same but made it clear to appellant that he would not release Mr. Dick who would constantly remain and be available for advice, if appellant wanted it, throughout all proceedings. Additionally, the trial judge heard the other motions filed by appellant and ruled on each one requested. Thereafter, on February 5, 1980, appellant filed a "Motion for Bench Warrant at Expense of State" and a request for reconsideration of an order entered by the trial judge on January 28, 1980. The order provided that before the court would order his requested witnesses confined in penitentiaries located at Levenworth, Kansas; Marian, Illinois; Terre Haute, Indiana; El Reno, Oklahoma; Lexington, Kentucky; and the Texas Department of Corrections, and non-incarcerated witnesses in Birmingham, Alabama and Dearborn, Michigan be brought to Houston at state expense, appellant would first have to submit an affidavit showing what testimony he expected to prove by the witnesses. Thereafter, on February 12, 1980, the state filed a motion to quash the subpoenas issued by appellant for the witnesses referred to above. On February 22, 1980, appellant again ap-peared in person with his appointed counsel, Mr. Dick, and after hearing arguments, the court granted the state's motion quashing the various subpoenas applied for by appellant. Appellant then filed a "Motion for Continuance," a "Motion Electing to have the Jury Assess Punishment" and a "Motion for Investigative and Expert Assistance Fee in an Indigent Case." Appellant was again in court on February 25, 1980, at which time the court heard his motion to discover and ordered the prosecutor to turn over to appellant evidence requested by him. The matter was carried for trial to February 26, 1980 and again to February 27, 1980, at which time appellant filed what he denominated a "Notice to the Court that He Refuses to Accept Sam Dick as his Legal Advisor and Request for Paul Norman Privett to be Allowed to Appear and Assist in the Defense" and a "Motion to Suppress Evidence". On that date the case was re-set for trial on March 3, 1980 when it was again re-set for trial for March 17, 1980 and held for trial. However, on March 18, 1980 the case was again re-set for trial to March 24, 1980. Finally, on March 31, 1980, the case was called for trial and sent to one of the annex courts for trial before a visiting judge. At this time, appellant filed a "Notice of Removal to Federal Court" which filing in the Federal Court was denied on April 2, 1980. In the annex court, the visiting judge held a hearing on appellant's ability to represent himself, during which appellant stated that he was incapable of representing himself and desired counsel. Mr. Sam Dick was then directed to represent appellant, and trial proceeded.

Under his first ground of error, appellant argues that his waiver of assistance of counsel was invalid because the record does not reflect either that appellant made a knowing and intelligent waiver or that he was adequately made aware of the dangers and disadvantages of self-representation, citing *Geeslin v. State,* 600 S.W.2d 309 (Tex. Cr.App.1980).

It is true that this record does not show any inquiry by the trial judge into the appellant's background, age, education, and experience prior to permitting appellant to

represent himself. However, what this record vividly reflects throughout some 100 pages of the court reporter's transcription of court proceedings is that appellant fully understood what he was doing and that he knowingly, intelligently, and, without any question, intentionally waived representation by counsel. In his "Motion to the Court that he Refuses to Accept Sam Dick as His Legal Advisor ...." appellant requested that Paul Norman Privett be allowed to assist him. Privett testified he was presently residing in the Harris County Jail where he was reviewing his appellate record on a conviction for aggravated robbery as an habitual offender in which he, Privett, was permitted to represent himself on trial. Appellants' attitude throughout the proceedings can best be summed up in his own words to the overly patient trial judge: "I do know the difference between right and wrong, but I don't go along with it, therefore, I formed my own society and I go by my own rules of our society."

This record shows that appellant's appointed counsel was present in court at all the settings of the case. Appellant has not shown that he was denied any benefit he would have received had the trial court further inquired as to appellant's background, age, education and experience, or any benefit he would have received, which he didn't, had he not waived counsel.

In fact, we note that when appellant appeared before the visiting judge in the annex court, and the judge attempted to satisfy himself as to appellant's ability to represent himself, the following occurred:

"THE COURT: I want the—the fact I want to bring up to you, the Motion to Represent Yourself to satisfy myself as to your qualifications to represent yourself. How old a man are you, sir?

MR. FULTZ: 37

THE COURT: Have you any experience in jurisprudence in this state in representing your case before a court?

MR. FULTZ: Just a little bit, Your Honor.

THE COURT: What is your school—

MR. FULTZ: Not enough to qualify myself at this point—not enough to qualify

myself to represent myself at this point. I do need assistance."

Following this hearing, the judge directed Mr. Dick to represent appellant and he did so throughout jury selection, presentation of the evidence, and arguments.

■ Admonishments given to a pro se defendant have the basic purpose of informing such a defendant of the dangers involved in self-representation. However, where a defendant partially represents himself and is also fully represented by counsel, no question of waiver of counsel arises. *Phillips v. State*, 604 S.W.2d 904 (Tex.Cr. App.1980); *Hawkins v. State*, 628 S.W.2d 71, at 75 (Tex.Cr.App.1982).

■ In cases such as the one before us, a distinction must be drawn between self-representation in pre-trial proceedings and at the trial itself, especially where stand-by counsel has been appointed to advise the defendant. Here appellant had the advice of experienced counsel to draw on in preparing for pre-trial proceedings and he was, thus, not subject to the same disadvantages as one without any counsel might be. In addition, the record reveals appellant's own lengthy experience with our criminal justice system. At all stages of the trial itself, appointed counsel actively conducted the defense. We feel this case demonstrates the fine balance between an accused's right to counsel and his right to waive same and represent himself and disagree that the trial court erred in allowing appellant to represent himself with advice of counsel at the numerous pre-trial hearings. Appellant's first ground of error is overruled.

■ By his second ground of error, appellant contends he "was denied the effective exercise of his right of self-representation." In his argument he recognizes "that exercise of his right to self-representation does not entitle him to obstruct the orderly procedure of the courts or interfere with the fair administration of justice." We are not impressed with this argument. It is inconceivable that the trial court in this case could have done any more to protect the rights of appellant than he did. Appellant's second ground of error is overruled.

■ By his third ground of error, appellant contends he was denied the effective assistance of counsel at trial. Appellant argues that even though Mr. Dick had been appointed by the court some three and one-half months previously, he had been acting only in an advisory role and that the day of trial was therefore the effective date of his appointment to actually represent appellant in trial. While Mr. Dick stated that he was not prepared to go to trial, he did not file any written motion for continuance. Moreover, while both a motion for new trial and an amended motion for new trial were filed, there is no contention in either that appellant was denied effective assistance of counsel at trial. As stated previously, the docket sheet tells us that this case was set for trial a total of at least six times. This court knows Mr. Sam Dick to be well-experienced in the trial of criminal cases. Appellant does not point to any matter that occurred during trial that would even hint at ineffective representation. This record shows a most effective cross-examination of all state's witnesses. At the punishment phase of the trial, counsel's objection succeeded in keeping the jury from knowing of two of appellant's convictions. Appellant repeatedly told the trial court that his only defense was "mental defect" but upon inquiry by the court, appellant steadfastly maintained he was not pleading insanity nor that he was incompetent to stand trial. He refused to state in open court what he meant by "mental defect" because he didn't want to put the prosecution on notice of what his defense was. He did, however, agree secretly to tell the judge what it was and he did so by an "affidavit" which he made upon condition the trial judge would seal and make a part of the record. This "affidavit" is a part of the appellate record and in it, appellant explains "mental defect" as

the mental and physical abuse that was/is imposed upon him, by the corrupt penal and judicial system, that has caused such a mental strain that a mental defect is created in which he is unable to cope with daily activities or functions within the normal structure of society, thus, forming a society of their own known as

the Wolverines—which means that defendant, among other Wolverines, have defected from the corrupt society of the American criminal justice system thus living within the guidelines and beliefs of the society of the Wolverines, who cannot morally accept the American criminal justice system.

For instance, a Russian who cannot morally live within the society of Russia who defects thus choosing to live within the American society! This is what Defendant means by mental defection. Defendant knows the difference between the rights and wrongs of the American criminal justice system, however, he cannot morally accept the society imposed upon all who fall within their grasp. Therefore Defendant is asserting that he has mentally defected to the society formed by the Wolverines as the only way he can secure and protect his moral integrity from the depredations and degradations of the society imposed upon him by the American criminal justice system.

The witnesses he sought to have present from the various penitentiaries, were allegedly other "Wolverines." The court was correct in quashing these applications for subpoena because appellant's "mental defect," even if established, would not be a defense to aggravated robbery. Therefore, appellants' counsel had nothing he could develop through defense witnesses to benefit appellant. Appellants contention that he was denied effective assistance of counsel is totally without merit and, therefore, his third ground of error is overruled.

■ By his fourth ground of error, appellant contends the trial court improperly admitted evidence of extraneous offenses at the punishment stage. Appellant points out that each of the judgments introduced to show conviction for a forgery-type offense recited that appellant had been indicted "in the above entitled and numbered cause" for two felony offenses either forgery and possession of a forged instrument or forgery and passing a forged instrument. Each judgment recites that one of the counts was dismissed and the state proceed-

ed to trial on a named offense for which appellant was convicted. We do not agree that the recitations in the judgments showed extraneous offenses, and accordingly overrule appellant's fourth ground of error.

■ In his fifth ground of error, appellant contends he "was improperly denied funds for an investigator." Suffice it to say appellant never secured a ruling of the court on his motion for investigative fees. Consequently, nothing is presented for review. Appellant's fifth ground of error is overruled.

The judgment is affirmed.

MURPHY, Justice.

I concur with the result reached by the majority, but, in all due respect, feel obligated to examine and discuss the authorities which support that result.

The Fourteenth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that the accused shall enjoy the right to assistance of counsel for his/her defense. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Webb v. State,* 533 S.W.2d 780 (Tex.Cr.App.1976). An accused may waive his/her right to counsel and the Court of Criminal Appeals has succinctly outlined rules applicable to that waiver. In *Renfro v. State,* the court stated an accused may waive his right to counsel so long as that waiver is made voluntarily and with knowledge of the consequences. 586 S.W.2d 496, 500 (Tex.Cr. App.1976) (citing *Jordan v. State,* 571 S.W.2d 883 (Tex.Cr.App.1978); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). To illustrate a proper waiver the record must clearly demonstrate the accused voluntarily, knowingly and intelligently waived his/her right to counsel in order to assert the right to represent himself or herself, i.e., the record should reflect the waiver of the right to counsel occurred after the accused was made aware of the advantages and disadvantages of self-representation. *Thomas v. State,* 550 S.W.2d 64, 67 (Tex.Cr.App.1977); *Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct.

at 2541. In the case at bar the trial court, by its own admission, did not conduct a hearing to determine appellant's ability to represent himself as outlined in *Geeslin v. State,* 600 S.W.2d 309, 313–14 (Tex.Cr.App. 1980). It is, however, abundantly clear from the state of record that appellant was knowledgeable of criminal procedures and thoroughly availed himself of those procedures. Furthermore, appellant could at all times avail himself of standby counsel. Although there is no evidence that appellant had prior experience representing himself, the record is sufficiently developed, to show a voluntary, intelligent waiver of counsel at the pre-trial hearings. *Compare, Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr.App.1981); *Jordan v. State, supra,* at 884. Moreover, it is also clear from the record that the evidence overwhelmingly supported appellant's conviction and appellant put on no evidence in his defense. Where guilt is clear due to the overwhelming and undisputed evidence against the accused a constitutional error may be harmless. *Clay v. State,* 518 S.W.2d 550, 553 (Tex.Cr.App.1975); *Smith v. State,* 557 S.W.2d 299, 302 (Tex.Cr.App.1977) (citing *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). The stricter test of harmless error applicable to conduct affecting constitutional rights requires this court to find the error harmless beyond a reasonable doubt, i.e., the error cannot have been calculated to deny the accused a fair trial. *U. S. v. Jennings,* 527 F.2d 862, 868 (5th Cir. 1976); *U. S. v. Steinkoenig,* 487 F.2d 225, 229 (5th Cir. 1973); *Beck v. State,* 583 S.W.2d 338, 347 (Tex.Cr. App.1979). After viewing the record as a whole and considering all the facts and circumstances of the events at issue, I find no reason to believe that the lack of precise admonition outlined in *Geeslin* swayed the trial court's judgment or affected the course of trial in any way. *See, Jordan v. State,* 576 S.W.2d 825, 829 (Tex.Cr.App. 1978). A reviewing court must be cautious in viewing any action as inconsequential which affects constitutional rights. *U. S. v. Jennings, supra.* It is clear, however, that in this case the error must be viewed as harmless beyond a reasonable doubt and,

therefore, guided by the above authorities, I would affirm the judgment of the trial court.