FLETCHER, Judge.
In March, 2003, U.S. Customs inspectors at Miami International Airport found heroin hidden in rosebuds contained in a shipment from Columbia. Customs agents then set up a controlled delivery of the shipment. The shipment was picked up and ultimately driven by co-defendant Campos to the warehouse of a flower company called Magic Flowers. Shortly after Campos drove the Magic Flowers van into the warehouse, appellant Dominguez- *733 Reyes arrived and also entered. The sur-veilling agents did not see what then transpired inside the warehouse.
Thirty to sixty minutes later, Dominguez-Reyes exited the warehouse and entered his car to depart. Campos drove the van out of the warehouse, at which time both men were stopped at gunpoint by law enforcement officers, ordered out of their vehicles, and handcuffed. Drug dogs alerted to the co-defendant’s flower van, which now held only that portion of the shipment containing the heroin capsules. The dogs did not alert to Dominguez-Reyes’ car. In a search incident to arrest, a list of carton numbers matching the heroin shipments was later seized from Dominguez-Reyes’ person. In a post-Miranda statement, Dominguez-Reyes informed the agents that someone named Ricardo had told him to copy the numbers down.
Dominguez-Reyes by motion sought to suppress the physical and testimonial evidence prior to trial, which motion the trial court denied.[1] Both parties stipulated that the motion to suppress was dispositive of the case against Dominguez-Reyes, and the court accepted his plea of nolo conten-dere with reservation of the right to appeal the denial of the motion to suppress.
The record provides that the stop and search of Dominguez-Reyes was based on the border search doctrine.[2] While the cases cited by the state fully support the stop and warrantless search of the co-defendant Campos and his vehicle as the person actually taking possession of and handling the contraband,[3] the border search rationale is inapplicable to the facts as they apply to Dominguez-Reyes. See Andreas, 463 U.S. at 769, 103 S.Ct. 3319; Hill, 430 F.2d 129 (5th . Cir.1970). The record shows that neither Dominguezn Reyes nor his car crossed the U.S. border. There is no actual evidence to show that Dominguez-Reyes was ever in possession of any of the boxes containing heroin, or that he had any contact with the tainted shipment, or with Campos while inside the warehouse. Dominguez-Reyes left the warehouse separately from Campos at *734 which time he was ordered out of his car at gunpoint and handcuffed, and was questioned for approximately an hour before being officially arrested.
The search of Dominguez-Reyes and his vehicle was conducted in the unfettered discretion of the Customs agents, who did not have a warrant, probable cause, or consent to do so. The border search doctrine was inapplicable to Dominguez-Reyes and the stop was thus illegal. Dominguez-Reyes’ post-arrest statement and the paper obtained from his pocket are fruits of the illegal stop.
The trial court erred by denying Dominguez-Reyes’ motion to suppress both the physical ■ and testimonial evidence. As both parties stipulated on the record that the motion to suppress was dispositive of the case against Dominguez-Reyes, we therefore reverse Dominguez-Reyes’ conviction and remand for proceedings consistent with this opinion.
Reversed and remanded.

. The U.S. Attorneys Office, which was involved in the controlled delivery operation, declined to prosecute and the matter was subsequently filed in state court.

. See, e.g., Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)(footnotes omitted)(The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an opportunity to identify and prosecute the person or persons responsible for the movement of the contraband. To accomplish this, the police, rather than simply seizing the contraband and destroying it, make a so-called controlled delivery of the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container.); United States v. Hill, 430 F.2d 129 (5th Cir.1970)("border searches,” though subject to the constitutional standard of reasonableness, have been uniformly upheld by the courts absent the normal requirements of a search warrant or the existence of probable cause).

.See United States v. Hill, 430 F.2d 129 (5th Cir.1970)(The class of persons who may be subjected to a border search is not limited to those suspected persons who are searched for contraband upon first entering the United States. Also included in the class are persons who work in a border area when leaving the area; persons engaged in suspicious activity near border areas; and, in some situations, persons and vehicles after they have cleared an initial customs checkpoint and have entered the United States. Therefore, we hold that when an individual has direct contact with a border area, or an individual's movements are reasonably related to the border area, that individual is a member of the class of persons that a customs officer may, if his suspicions are aroused, stop and search while the individual is still within the border area).