**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ellsworth E. LONABAUGH, III,**
**Defendant-Appellant.**

**No. 73-2241.**

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1973.

James S. Hale, Harlingen, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Robert Darden, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before TUTTLE, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant Lonabaugh was convicted in an non-jury trial in the District Court for the Southern District of Texas, Brownsville Division, of conspiracy to possess marihuana with intent to distribute and possession of marihuana with intent to distribute.[1] The only question presented for review is whether the district court erred in overruling Lonabaugh's motion to suppress 35 pounds of marihuana seized by Customs agents at the time of his arrest, and marihuana sweepings subsequently taken from his automobile.[2] We agree with appellant that the district court erred in overruling his motion.

On December 7, 1972, U. S. Customs agents received a tip from a reliable informant that Lonabaugh would later that day drive a red and black Ford bearing Texas license plates number RFV-121 to the Brownsville, Texas, airport, and would send a female accomplice to Houston on an airplane with two blue suitcases containing marihuana. The agents rushed out to the airport, and saw Lonabaugh and a female companion drive up in the car described by the informant. The agents watched them get out of the car and carry two blue suitcases into the airport. Inside the airport, Lonabaugh purchased one ticket for Houston, checked the two suitcases with the airline, placed the claim checks with the ticket and handed the ticket to his companion. The pair then stopped in the airport coffee shop for something to drink. While they were in the coffee shop, the agents went back to the baggage area and separated the two suitcases from the rest of the baggage being loaded on the flight to Houston. After leaving the coffee shop, Lonabaugh and the girl went to the departure gate, where she boarded the plane for Houston. As he was returning to the lobby, Lonabaugh was stopped by the Customs agents and taken to the baggage area. He identified the suitcases as his, but said he did not have the keys. The agents then broke into one of the suitcases and discovered some marihuana. Lonabaugh was then arrested, as was his accomplice, who was taken from the plane. The agents obtained keys to the suitcases from the accomplice, and they discovered more marihuana in the other suitcase.

Lonabaugh moved to suppress the marihuana as evidence on the grounds that it was obtained in a warrantless search, and no exception to the warrant requirement applied. The district court denied defendant's motion on the grounds that the officers had probable cause to conduct the warrantless search, exigent circumstances excused the failure to obtain a warrant, the search was a border search, and defendant had no standing to protest the search of the suitcases.

I.

Our task in this case is made easier by the fact that another panel of this court has recently decided a virtually identical case. United States v. Garay, (5 Cir. 1973) 477 F.2d 1306. The court in *Garay,* after setting out facts almost

---

1. 21 U.S.C. § 841(a) provides:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
   21 U.S.C. § 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. The search of the automobile was a direct result of the search in the airport. If the latter is forbidden, the fruits of the former must also be excluded. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Silverthorne Lumber Co. v. U. S., 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

identical to those described above, concluded that the search in that case was constitutionally invalid. We agree with the *Garay* court's application of the law in that case, and finding this case to be virtually identical, reach the same result.

There is no need for us to decide whether the officers had probable cause to search the suitcases, since the government has not fulfilled its burden under *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) of demonstrating the applicability of an exception to the warrant requirement. As the court in *Garay* stated.

> While the exigencies of the situation may well have justified the warrantless detention of appellants, they cannot validate the search of the suitcases made at a time when appellants were under restraint, if not under formal arrest. At that point, appellants were incapable of concealing or destroying the suitcases or their contents. Nor was there any significant probability that the suitcases would escape search by being moved to Chicago or Detroit aboard the airplane, for the officers, through their possession of the baggage checks identifying the suitcases, had effective control over their movement. Even if the officers had been unable to retrieve the bags before the plane departed El Paso, they could have arranged with agents in Chicago or Detroit to intercept the bags there. Thus, the mobility of the bags at the time of the seizure does not bring the instant case within the doctrine of [*Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)], because their mobility was at all times subject to the control of the arresting officers. In short, the officers could and should have held the bags until they obtained a warrant authorizing an examination of their contents.

■ In the case at bar, the officers' control over the suitcases is even clearer than it was in *Garay*; the suitcases had already been removed from the baggage cart. The officers stated that they had good relations with the airline personnel and were well known to them. The officers' own testimony indicates that nothing would have prevented them from detaining the suitcases while a warrant was obtained. There were no exigent circumstances present in this case which excused the failure to obtain a warrant.

## II.

In its brief on appeal, the government argued only two points: that Lonabaugh had abandoned the suitcases, and therefore had no standing to object to the search and that the search was justified as a "border search." At oral argument, however, counsel for the government conceded that this search was not a "border search." We think he was correct in doing so.

The governing standard for determining whether a search falls into the border search category is Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Almeida-Sanchez was stopped by a roving border patrol while driving on State Highway 78 in California about 25 miles from the Mexican border. Highway 78 never crosses the border and at all points lies north of Interstate 80, a major east-west highway. The government justified the search of Almeida-Sanchez' car by citing § 287(a) of the Immigration and Nationality Act, 8 U.S.C. § 1357(a), which allows warrantless searches of automobiles "within a reasonable distance from any external boundary of the United States." A "reasonable distance" is defined by 8 C.F.R. § 287.1 as "within 100 air miles from any external boundary of the United States."

■ The Court held that a search is not exempted from the warrant and probable cause requirements of the Fourth Amendment simply because it occurs within 100 miles, or any other specific distance, of the border. To qualify as a border search, a search must occur *at* the border or at the *functional equiv*

*alent* of the border. 413 U.S. at 272, 93 S.Ct. at 2539, 37 L.Ed.2d at 602.

The meaning of the phrase "at the border" seems clear enough. It obviously refers to searches of persons or property as they are in the act of crossing the border. But the question of what is the functional equivalent of a border is more complex, and will have to be developed on a case-by-case basis. The example given by the Court in *Almeida-Sanchez* was the search of passengers disembarking from an airplane arriving in St. Louis non-stop from Mexico City. 273 U.S. at 413, 93 S.Ct. at 2539, 37 L.Ed.2d at 602. We will not attempt to catalogue all the situations which may be classified as functional equivalents to searches at the border, but it is appropriate for us to state why we are convinced that this case does not involve such a search.

■ The district court took judicial notice of the fact that the Brownsville airport is only two miles from the Mexican border and that significant amounts of controlled substances are illegally imported into this country from Mexico. This is not good enough. Proximity to the border is not the only standard for determining whether a search is the functional equivalent of a search at the border. There must be some substantial connection with an actual or suspected border crossing by the person or thing to be searched. In other words, the searching officers must know or have a reasonable suspicion that the very individual or thing to be searched has itself just crossed the border. Judicial notice or even proof of many illegal acts in the area in which the search takes place is not enough.

■■ It is not difficult to see the reasons for these restrictions. The justification for the border search exception to the warrant and probable cause requirements of the Fourth Amendment is not merely that searches near the border are very effective in discovering contraband and criminal activity. Such a justification would totally emasculate the Fourth Amendment, since we seem to be reaching a point in history in which the justification could apply to nearly every facet of our lives. The justification is that a nation has an overriding interest in protecting itself by excluding persons and objects at the border which it deems undesirable. Carroll v. United States, *supra*, 267 U.S., at 154, 45 S.Ct. 280. See Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). The nation's interest in protecting itself from imported material traveling around within the country has never been, nor could it be, held to override the guarantee of freedom from governmental intrusion embodied in the Fourth Amendment. In the case at bar there is no indication that Lonabaugh or his companion had at any time been in Mexico, much less in the recent past. Neither is there any allegation that the Customs officers had any information as to the origin of or itinerary of the marihuana they suspected was inside the suitcases. Therefore the justification of the search as a border search must fail.

In a case factually similar to *Almeida-Sanchez*, this court in United States v. Byrd, 483 F.2d 1196 (1973), emphasized the distinction between a search at the border or its functional equivalent, on the one hand, and a search which occurs near a border, on the other. We held that a search by a roving border patrol on a road 45 miles from the Mexican border was unconstitutional. There, as here, the officers had no indication, other than their general knowledge about the area of the country, that the objects of their search had recently been in another country. Because any known or suspected connection with a recent border crossing was totally lacking, the search could not be permitted. See, also, United States v. McKim, 487 F.2d 305 (1973).

In United States v. Steinkoenig, 487 F.2d 225 (1973), this court upheld the search of a truck which had not crossed the border, but which had been parked near the Rio Grande River from 11:00 p. m. one night until 3:00 a. m. the next morning. In that case, the Customs

**1262**

agents had strong reason to believe that the truck had been loaded with material which had crossed the border during that period, and searched it 15 minutes after it left the border area. As was held there, the strong nexus with the border distinguished that case from *Almeida-Sanchez*. The agents had good reason to believe the contents of the truck, though not the truck itself, had just crossed the border.

Under these standards the search of Lonabaugh's suitcases does not pass constitutional muster. As the courts in *Byrd* and *Almeida-Sanchez* have recognized, to call a search a border search simply because it occurred near the border would effectively wall off an entire section of the country from the warrant and probable cause requirements of the Fourth Amendment. This we cannot allow.

### III.

The final issue with which we must deal is standing. The government argues that Lonabaugh abandoned the suitcases when he checked them with the airline and handed the baggage checks to his companion. But this is entirely inconsistent with the government's entire theory of this case. The complaint indicates that Lonabaugh and his companion were engaged in a conspiracy to possess the marihuana with the intent to distribute it. This case is like one in which a person gives something to a messenger to transport for him. There is no intent to sever all connection with the object being transported. The messenger is merely the agent of the sender assigned to transport the object to another person. Here, the object in question never traveled any further toward its destination in Houston (or possibly even further away than that) than the baggage room a few yards from where Lonabaugh was arrested. It was not abandoned.

The cases cited by the government on the standing issue are inapposite. United States v. Abel, 362 U.S. 217, 80 S.Ct.

683, 4 L.Ed.2d 668 (1960), involved a man who had deposited certain material in a wastebasket in his hotel room, and had checked out of the hotel. Thus, he had abandoned the material in a dual sense. United States v. Colbert, 474 F.2d 174 (5 Cir. 1973) is also unconvincing as precedent for this case. In *Colbert* the defendants had placed a brief case on the sidewalk and walked away from it. When asked about the brief case, they denied any connection with it. In this case, Lonabaugh had purchased the tickets on which the suitcases were checked, and the evidence indicated the suitcases belonged to him. In addition, Lonabaugh told the officers that he had checked the baggage with the airline. In no sense can he be said to have abandoned the suitcases.

We hold that the search that produced the 35 pounds of marihuana introduced at Lonabaugh's trial was unlawful. The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.