**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Lauro Mirnes SALAS, Defendant-Appellant.**

**No. 73–1896.**

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1974.

Alan Brown, Robert Mitchell, San Antonio, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., Joel D. Conant, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

The only issue in this appeal from a conviction of unlawful possession of her-

oin and cocaine with intent to distribute, 21 U.S.C.A. § 841(a)(1), is the validity of a seizure by federal agents of the narcotics, found in an automobile in which appellant was a passenger.

At the time federal agents began following the car they were in possession of the following information. Beginning about 2:00 p. m. they had under their surveillance a house in San Antonio, Texas, which they were informed was a place involved in narcotics distribution. They had been furnished the names of persons said to be participating in the distribution. Persons in the house were expected to make a delivery of a quantity of narcotics to the "big man", a named dealer who was coming from Houston. (Some references are to the effect the Houston dealer was coming to consummate a sale rather than a purchase. We do not consider this variation to affect the result in the case.) Between about 2:00 p. m. and 4:30 p. m. the federal officers saw Manuel Cisneros come out of the house several times and look around, and they saw him leave the residence on one occasion and go to a nearby wooded area and return. They observed several different vehicles come to the house and depart.

At approximately 5:45 p. m. a federal officer informed the San Antonio Police Department that his agency planned to obtain a federal warrant to search the premises. The federal officers then discovered that the city police, based on information from a different informant and as part of an investigation independent of and unknown to the federal officers, had obtained a search warrant for the premises and planned to execute it. The federal officers abandoned their proposal to obtain a federal warrant, and the two agencies agreed to work together in executing the city warrant.

At approximately 4:30 p. m. the federal officers received further information from their informant describing the details of the transactions to take place with the "big man", including a description of a meeting place away from the house, a description of the "big man's" car, and information that there would be three Negro males accompanying him. Federal officers put the meeting place under surveillance, and at the stated time there appeared at the scene a Chevrolet automobile which had departed the residence, occupied by Cisneros and Frank Gonzalez. The "big man" went to the Chevrolet then returned to his car, and the vehicles left. Surveilling officers followed the two cars but lost the dealer's car in traffic. The Chevrolet was stopped, and Cisneros and Gonzalez were arrested and discovered to have in the car a quantity of heroin and a large sum of money.

At approximately 6:00 p. m. the appellant, Salas, appeared on the scene for the first time. His name and identity were unknown to the federal officers. He drove to the house in a Ford, entered the house, remained about five minutes and left. Surveilling officers secured the license number of his car and tried without success to trace it. At approximately 7:50 p. m. appellant returned in the Ford, again entered the house, remained about five minutes, and returned to the car. On neither occasion was he observed to be taking anything into or from the house. During the approximate time span between the two visits of the Ford to the house approximately four vehicles came to the house and departed. Officers attempted unsuccessfully to follow some of them.

When the Ford left after its second visit, a surveilling automobile unit was directed by a radio message from a surveilling officer to stop the car. Federal cars followed the Ford, and agents observed the driver and the passenger, Salas, to be looking about in what appeared to be a nervous manner.[1] When traffic conditions permitted agents

---

1. The Ford was travelling at an unusually slow speed, but we attribute no significance to this.

pulled alongside the Ford. One flashed his badge and a gun and identified himself as a federal agent and directed the driver to stop. The driver put his hands on the wheel, while the appellant-passenger ducked down in the seat and then reappeared. As officers came up to the stopped vehicle one of them saw in plain view on the floor near where Salas was seated a paper parcel which contained the contraband in question.

This is a close case, but we conclude that there was sufficient probable cause-just barely sufficient-to justify stopping the car and arresting Salas.[2] The officers were informed that the house was a center of narcotics distribution. They knew that persons leaving the house approximately three hours earlier had been participants in a sizable narcotics transaction at exactly the time, place and manner stated by their informant, and that the Chevrolet which had left the house had been the means of conveying either to or from the Houston dealer a quantity of narcotics. They had seen appellant and the Ford come to the house twice in a matter of two hours, stay briefly and depart. They had seen a number of other vehicles follow the same pattern of coming to the house, the occupants entering and remaining briefly, and then departing.[3]

In contending there was no probable cause to arrest the appellant, defense counsel focuses on the fact that Salas had not been named by the informant or identified by description as an actor in the narcotics transactions, nor had the Ford automobile been identified. This misconceives the issue, which is whether there is probable cause to believe that the Ford and its occupants, whatever their identity might be, were involved in the transportation of narcotics to or from a distribution point. The identity of the occupants is not a prerequisite to the existence of probable cause to believe that they were transporters.

This case is not governed by Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) where the apprehension of the defendant and the seizure from his person of narcotics were held invalid after he had been seen during an eight hours surveillance conversing on six or eight occasions with known narcotics addicts. The federal officers here were not centered upon narcotics users but upon a distribution point. They had observed numerous vehicles coming to the place and the occupants staying briefly and departing, and at least one of the vehicles, occupied by persons from the house, had departed the house and engaged in transportation of narcotics to, or receipt from, the Houston dealer.

Once we conclude, as we do, that the arrest was valid, then the subsequent observation of and seizure of the contraband in plain sight is also valid. No contention is made by appellant that the federal offices had an opportunity to and should have obtained a warrant for the arrest or a warrant for the search of the automobile. Rather his point is that there was insufficient probable causal relationship pointing to him and to the Ford automobile to justify the police in stopping the car and arresting him. This point must be rejected.

Affirmed.

---

2. The discovery of the contraband on the floor in plain sight at the time of, or seconds after, the arrest cannot supply probable cause for the arrest if previously lacking.

3. This is not an investigatory stop case. The officers acknowledged that although their instructions were to stop the car they intended to stop the vehicle and to arrest the occupants as well.