**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Brian A. ANDERSON, Richard Quentin Felts, and Paul William Spicer, Defendants-Appellants.**

No. 73-2774.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1974.

Rehearing and Rehearing En Banc Denied Nov. 22, 1974.

Dick DeGuerin, Houston, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Appellants Brian A. Anderson, Richard Quentin Felts, and Paul William Spicer appeal from convictions for violating various parts of the federal narcotics law.[1] Additionally, Spicer appeals his conviction for carrying a firearm during the commission of a felony.[2] An informant's tip provided the initial impetus for the investigation leading to the arrests of the appellants, but additional evidence of the informant's credibility was provided by police surveillance and investigation. Because we find there was sufficient independent observation to corroborate the details of the tip and thus negate the possibility that the informer fabricated his report or passed on unreliable rumor, we affirm the judgment of the district court.[3]

## I. THE FACTS

As in most search and seizure cases, the facts here are extremely important. Although they are not in substantial dispute, they are recounted in some detail.

On February 4, 1973, at about 5:00 p. m., Customs Agent George H. Murray received information from an undisclosed but previously very reliable informant[4] that five persons were in McAllen, Texas, for the purpose of purchasing narcotics, which they intended to transport to Fort Wayne, Indiana.[5] The informant provided Murray with a list of names which consisted of "Church," "Betz," and the names of the three appellants. The informant further indicated that he had seen these persons in McAllen on a previous occasion when they had come to pick up narcotics and that they were using the same mode of operation that they had used on the previous trip: they rented two vehicles in McAllen, one to be used for local operations and the other to be taken to Fort Wayne.

Investigation by customs agents confirmed that Brian A. Anderson had

1. Specifically, all appellants were charged with and convicted of one count of conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), as made applicable by 18 U.S.C. § 2. 21 U.S.C. § 841 provides:

   (a) Except as authorized by this subchapter it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

   21 U.S.C. § 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

   18 U.S.C. § 2 provides:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.
   (b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. Carrying a firearm during the commission of a felony is a violation of 18 U.S.C. § 924(c)(2). This statute provides:
   *       *       *       *       *
   (c) Whoever—
   (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States.
   shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than 10 years.

3. Although we find that the search of Spicer's and Felts' luggage was constitutionally impermissible, see Part III infra, this conclusion does not alter our result.

4. The record reveals that the informant had given Agent Murray information resulting in the seizure of narcotics eight times within the last eight months.

5. The record indicates that only four of the named individuals flew in on a plane—the three defendants and Church, who was never seen by agents. The remaining individual whose name was on the list, Betz, was not seen by agents until he drove up to the motel where the appellants were staying on the night of February 24.

rented a 1973 Pontiac from National Car Rental earlier that afternoon, the car to be returned to Fort Wayne. Gregory C. Church rented a 1973 Chevrolet for local use at the same time. Murray then located the appellants in McAllen using the information he gained from the informant and the auto rental agency. By checking motel records, he found that two rooms in the Rodeway Inn were rented in the names of "Church" and "Spicer," respectively.

Murray then began an intermittent surveillance of the appellants which revealed no criminal activity. On February 26, a Monday, the three appellants, as well as Betz and an unidentified female who arrived the night of February 24, checked out of the Rodeway Inn and into the Quality Motel in Pharr, Texas. The three appellants occupied room 102 and the other persons room 103. The three appellants paid for their room in advance.

On the morning of Tuesday, February 27, Betz and the woman left the motel. Later that same morning, Murray and two other officers saw three individuals load the two rented cars with boxes and other luggage and depart. As the Chevrolet passed the surveillance point, Murray recognized Spicer and Felts in the car; Murray followed the Pontiac, since that car was to be returned to Fort Wayne. At Donna, Texas, on Expressway 83, the car was stopped and searched. Anderson, the only occupant, was arrested. The search revealed four cardboard boxes containing marijuana.

Felts and Spicer were not followed from the motel, but were subsequently seen and photographed by other agents in downtown McAllen. Later that same day at the McAllen airport, Murray observed Felts and Spicer check three pieces of luggage at an airline counter and return the 1973 Chevrolet to the National Car Rental. Both Felts and Spicer were arrested and searched. Murray took the baggage claim checks from Spicer's ticket and recovered the luggage Spicer and Felts had checked, which was already aboard the plane. Spicer and Felts each claimed one of the bags, but both disclaimed ownership of the third bag, although it was checked on Spicer's ticket and Murray had seen Felts check it in. The luggage and defendants were taken to the police station where all the luggage was opened and searched without a warrant. Felts' suitcase contained marijuana; Spicer's luggage contained a book of addresses, along with other incriminating memoranda;[6] the unclaimed suitcase, which was checked on Spicer's ticket, contained a pistol with Spicer's thumbprint on the holster and other incriminating paraphernalia.[7]

At trial to a jury, counsel for all defendants objected to the introduction of the evidence seized in the search of Anderson's car, claiming there was not probable cause for the search or for his arrest. Counsel for Spicer and Felts also objected to the introduction of evidence obtained from a warrantless search of the suitcases they checked at the airport, alleging the lack of exigent circumstances. All objections were overruled by the court and defendants were convicted on the counts charged.

6. Specifically, Spicer's briefcase contained a note pad showing Felts' address, two record books showing the addresses of Betz, Church, and Felts, a piece of paper containing radio frequencies and the names of police units.

7. In addition to the gun and holster, the unclaimed bag contained an additional cartridge; passenger receipts from four United Airlines tickets, dated February 24, 1973, from Fort Wayne to McAllen, in the names of Church, Spicer, Anderson, and Jones (the same name under which Felts had purchased a return ticket from McAllen to Fort Wayne); passenger receipts from four United Airlines tickets dated February 8, 1973, from Fort Wayne to Corpus Christi in the names of Anderson, Spicer, Vela, and Wilt; a baggage claim check corresponding to stubs found in room 102 of the Quality Motel; a package of plastic trash bags of the same type that was used to wrap the marijuana found in Anderson's car; a weapon commonly referred to as a "slap jack;" and various pills and tablets.

All defendants now appeal, alleging as error the introduction of evidence objected to at trial. We consider the issues *seriatim*.

## II. ANDERSON'S SEARCH AND ARREST

■ While searches conducted without the prior issuance of a warrant are, for the most part, per se unreasonable, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), there are a few clearly delineated exceptions to the warrant requirement of the Fourth Amendment. Among these is the warrantless search of a moving automobile, long accepted and justified on the basis of exigent circumstances. *See* Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). A contemporaneous search of containers in the vehicle which could reasonably be employed in the illicit carriage of contraband is also constitutionally permissible. United States v. Soriano, 497 F.2d 147 (5th Cir. 1974) (en banc); United States v. Chapman, 474 F.2d 300 (5th Cir. 1973). Such searches of the automobile and containers therein may be performed only where officers conducting the search have probable cause to believe they will find evidence pertaining to a crime. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L. Ed.2d 538 (1968); United States v. Halliday, 487 F.2d 1215 (5th Cir. 1973); United States v. Troise, 483 F.2d 615 (5th Cir. 1973). We believe that the requirements of probable cause for a warrantless search are met in this case.

■ Since the informant's tip initiated the investigation, it must be the focal point of the probable cause analysis. Use of an unnamed informant's tip to establish probable cause has been a cource of frequent litigation in the courts. Recent cases have relied upon what has come to be known as the *Aguilar-Spinelli* test—drawn from two celebrated Supreme Court cases—to assess the tip's usefulness for both searches pursuant to warrants and warrantless arrests and searches.[8]

Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), held that the affidavit supporting the issuance of the search warrant must present sufficient objective evidence to enable a magistrate to conclude that the unnamed informant is credible or that his information is reliable, and the affidavit must set forth some of the underlying circumstances which reveal the source of the informant's information pertaining to criminal activity. The *Aguilar* test was modified in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969) where the court held that the latter "prong" of *Aguilar* can be met by description in the affidavit of criminal activity "in sufficient detail that the magistrate may know [the informant] is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation," *id.* at 416, 89 S.Ct. at 589, and that even an undisclosed informant's tip found wanting under the *Aguilar* test may provide the basis for a finding

---

8. *See, e. g.*, United States v. Canieso, 470 F. 2d 1224 (2nd Cir. 1972). In Spinelli v. United States, 393 U.S. 410, 417, n. 5, 89 S. Ct. 584, 589, 21 L.Ed.2d 637 (1969), the court indicated that the analysis required for assessing probable cause for an arrest without a warrant is "basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." We therefore cite cases dealing with search warrants, as well as warrantless arrests and searches, in support of our conclusion that there is a sufficient factual basis to support a finding of probable cause here. We recognize, of course, that the standards applicable to the factual basis supporting probable cause for a warrantless arrest and search are at least as stringent as those applied to a search warrant, Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and may even be more stringent, *see, e. g.*, United States v. Squella-Avendano, 447 F.2d 575, 579 (5th Cir. 1971).

of probable cause if parts of it have been corroborated by independent sources, *id.* at 415, 89 S.Ct. 584; *see* United States v. Squella-Avendano, 447 F.2d 575, 579 (5th Cir. 1971).

Recent applications of the *Aguilar-Spinelli* test indicate that less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agents yields sufficient verification or corroboration of the informant's report to make it apparent the report was not fabricated. United States v. Squella-Avendano, *supra,* 447 F.2d at 580; *accord* United States v. Canieso, 470 F.2d 1224, 1231 (2nd Cir. 1972); United States v. Acarino, 408 F.2d 512, 515 (2nd Cir. 1969). And the veracity of an unknown informer can be sufficiently determined by the searching officer's personal observation of some activity which is consistent with the tip but which would appear harmless without it. Thompson v. White, 406 F. 2d 1176, 1178 (5th Cir. 1969); United States ex rel. Cunningham v. Follette, 397 F.2d 143 (2nd Cir. 1968); Bailey v. United States, 386 F.2d 1, 3 (5th Cir. 1967).

Since the informant in this case had provided information leading to the seizure of narcotics eight times within the preceding eight months, the first prong of the *Aguilar* test is met. Likewise, the independent corroboration of the informant's tip satisfies the second prong of the test as modified by later opinions. The informant told Murray that the appellants were in town and described their mode of operation. Murray's investigation revealed the appellants were in fact in McAllen, that they had rented cars, that one of the cars was for local use, and that the other car was to be returned to Fort Wayne. All of this confirmed the informant's tip.

We believe that this corroboration evinced a knowledge of the inner workings of the appellants' system sufficient to dispel any belief that the tip was based upon "casual rumor," "suspicion," or "mere conclusion." *See* United States v. Sellers, 483 F.2d 37 (5th Cir. 1973). Since the information supplied by the informant positively indicated that the defendants intended to violate the law in a specific and detailed manner, the fact that the informant did not supply the agent with personal knowledge that a purchase had taken place was of no consequence. *See* United States v. Drew, 436 F.2d 529, 533 (5th Cir. 1970). The corroborative evidence here is quite similar to factual bases found to support determinations of probable cause in recent undisclosed informant cases,[9] and

9. Indeed, in many recent cases a finding of probable cause has been based on a factual situation similar or arguably less corroborative than the one before us. In United States v. Drew, 436 F.2d 529 (5th Cir. 1970), for example, the court determined that there was sufficient corroboration to support a finding of probable cause where the informant said three males from Missouri were in town at the Sands Motel to buy drugs, describing their car and license number. Agents merely corroborated the fact that the car was at the Sands Motel. Likewise, in United States .v. Rodgers, 442 F.2d 902 (5th Cir. 1971), a sufficient basis for probable cause was found where the informant said that the defendant was in town and using a 1968 camper with North Carolina license plates. Agents corroborated this by ascertaining that the place where the informant said the arrestee could be reached corresponded to the place at which the truck was located, and that the arrestee also drove his truck to the place the informant said he would at the time the informant said he would. *See also,* United States v. Salas, 488 F.2d 939 (5th Cir. 1974) (probable cause found even though the arrestee, who was not named by the informant as a party to this criminal activity, only appeared at a house identified by the informant as a narcotics distribution point); United States v. Halliday, 487 F.2d 1215 (5th Cir. 1973) (probable cause based on two tips corroborated by defendants' loading boxes into a trailer); United States v. Holliday, 474 F.2d 320 (10th Cir. 1973) (factual basis supporting probable cause found where informant said that arrestee had a distillery and the vehicle described by the informant as the delivery truck was found to contain illegal whiskey); United States v. Canieso, 470 F. 2d 1224 (2nd Cir. 1972) (informant's tip held sufficiently corroborated by entirely innocent acts: the defendants took the same airplane, sat in close proximity to each oth-

we therefore hold that the customs agents had probable cause for the search of Anderson's car.[10]

Appellants allege a lack of probable cause in challenging Anderson's arrest, as well as the search of his car. Although the record is not completely clear, it appears that the search of the car occurred prior to Anderson's arrest. If this was the case, the discovery of marijuana in the trunk of the car certainly provided probable cause for the arrest. Even if the search was performed subsequent to the arrest, however, there was still probable cause for an arrest without a warrant.

The probable cause element for a warrantless arrest, as in the case of a warrantless search, may be supplied by information acquired by the arresting officers which corroborates the informant's tip that the arrestees had committed or were in the process of committing a felony, even if the tip alone would not support a finding of probable cause. *See* Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Indeed, numerous courts have applied the modified *Aguilar* test to warrantless arrest situations. *See, e. g.,* United States v. Squella-Avendano, 447 F.2d 575 (5th Cir. 1971); United States v. Canieso, 470 F.2d 1224 (2nd Cir. 1972). Hence the corroboration of the informant's tip which contributed to a finding of probable cause for the search of Anderson's car will also justify his arrest. We therefore find that neither Anderson's arrest nor the search of his car violated the provisions of the Fourth Amendment.

## III. ARREST AND SEARCH OF SPICER AND FELTS

Similar reasoning leads us to the conclusion that the arrests of Spicer and Felts were constitutionally permissible. Certainly the corroborative evidence supplying the basis for a finding of probable cause for Anderson's arrest applies with equal force to the arrests of Spicer and Felts. Moreover, after the marijuana was found in Anderson's car, an even stronger argument could be made as to the arrests of Spicer and Felts because they were constantly seen with Anderson during the previous four day period, and the informant's tip, now proven completely accurate as to Anderson, implicated them as well. Hence there was probable cause for their arrests without a warrant.

The warrantless search of Spicer's and Felts' luggage, *occurring after their arrests,* presents a more difficult problem. However, the gun which serves as the basis of the third count of the indictment, as well as almost all of the incriminating material found in Spicer's and Felts' possession, was taken from the piece of luggage which neither Spicer nor Felts would claim.

Our conclusion as to the materials taken from that suitcase would appear to be directly controlled by United States v. Colbert, 474 F.2d 174 (5th Cir. 1973) (en banc). In *Colbert,* the two defendants, one of whom fit the description of a wanted suspect, were seen

---

er, nodded to each other once, and took the same cab to their hotel); Bailey v. United States, 386 F.2d 1 (5th Cir. 1967) (probable cause found where agents were informed that the defendant was traveling to Roma, Texas, to buy heroin, and agents subsequently saw a car, with the license number and description matching the information provided by the tip, being driven in an evasive manner).

10. In their brief, appellants argue that the agents had ample time to apply for and secure a warrant, and thus, there were no exigent circumstances for the arrest and search. However, appellants' movement from one motel room to another made it difficult to procure a warrant for the search of a specific place. Moreover, Agent Murray testified that based on his experience, drug transactions usually occur immediately prior to the buyers' departure from the area. And, in fact, Anderson's car was not stopped until it was clear to the observing agents that it was leaving the area. Therefore, any earlier search of the defendants in their motel rooms would have probably produced negative results.

carrying briefcases by policemen. As the officers approached the defendants to question them, the defendants set their briefcases on the sidewalk. They subsequently denied that they owned the briefcases or had any knowledge of them, and began to walk away leaving the briefcases on the sidewalk. The officers arrested the defendants for failure to carry a Selective Service registration certificate, and placed them in the patrol car. The officers then opened the briefcases, finding sawed-off shotguns. The defendants were later convicted of possession of unregistered sawed-off shotguns. The Fifth Circuit affirmed the convictions holding the weapons properly admitted into evidence because the defendants abandoned the briefcases.

Here, as in *Colbert,* the defendants abandoned the luggage before the search took place. As in *Colbert,* the defendants here, in response to questions from authorities, disclaimed any knowledge of the bag. Finally, in neither case did the officers compel the defendants' actions. Hence, in accordance with the result in *Colbert,* we find that Spicer and Felts could have entertained no reasonable expectation of privacy in the unclaimed suitcase. They therefore lack standing to challenge the search of the unclaimed bag. *See* Lurie v. Oberhauser, 431 F.2d 330 (9th Cir. 1970).

The search of the claimed baggage is more troubling. Two recent decisions of this court have held the product of a search of luggage checked at an airport inadmissible in the absence of a search warrant—where, as here, the owners of the luggage are arrested or detained by authorities. *See* United States v. Lonabaugh, 494 F.2d 1257 (5th Cir. 1973); United States v. Garay, 477 F.2d 1306 (5th Cir. 1973). *Lonabaugh* and *Garay* make it quite clear that when officers, through their possession of baggage checks or in some other manner, have effective control over the movement of checked luggage, as they did here, there is a lack of exigent circumstances upon which to justify a warrantless search, probable cause notwithstanding. Hence the search of the claimed baggage was impermissible and the products of the search were inadmissible. This conclusion, however, does not change the outcome of the case.

Since the search of the claimed luggage was unconstitutional, we must determine whether the court's admission of the fruits of the search was harmless by asking whether we can "declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967). The Supreme Court has found harmless error—even where constitutional rights were at issue—in a case in which the tainted evidence did little to prove a defendant's guilt and the valid evidence was strong. *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Likewise, in United States v. Steinkoenig, 487 F.2d 225 (5th Cir. 1973), a panel of this court held that evidence improperly admitted as a result of an unconstitutional search was harmless in a situation quite similar to the one before us.

In *Steinkoenig,* the defendant and three accomplices were implicated by an informant's tip. Pursuant to a valid border search of the van used by the defendant, agents discovered 190 pounds of marijuana. Agents then arrested the defendant and searched the motel room next to which the van was parked, finding a small amount of marijuana. The defendant was charged with and convicted of conspiracy to import, and possession with intent to distribute the 190 pounds of marijuana found in the van. On appeal, the court, assuming the warrantless search of the motel room to be unconstitutional, found the error harmless.

The record here indicates that Felts' suitcase contained but a small amount of marijuana;[11] Spicer's suitcase contained

---

11. Felts was convicted of conspiracy to possess marijuana *with intent to distribute* and possession *with intent to distribute.*

only the names and addresses of Church, Betz, and Felts, and a listing of radio frequencies. As in *Steinkoenig*, these items "shrink into insignificance" when compared with the properly admitted evidence. We therefore conclude that any error in admitting the product of the search of the claimed luggage was harmless beyond a reasonable doubt. *Cf.* United States v. Bankston, 424 F.2d 714 (5th Cir. 1970).

The judgment of the district court is therefore

Affirmed.