**UNITED STATES of America, Plaintiff,**

v.

**Antoinette Louise GRIFFIN et al., Defendants.**

**Crim. No. 75–81026.**

United States District Court, E. D. Michigan, S. D.

May 20, 1976.

---

John L. Christensen, Asst. U. S. Atty., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for plaintiff.

Louis F. Simmons, Jr., Simmons, Fuller & Richards, P. C., Marshall C. Hill, Detroit, Mich., Judith D. Doran, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

On July 23, 1975, a seven-count indictment was returned in this case. In two counts of that indictment, all three defend-

ants, Antoinette Griffin, Thomas Griffin, and Linda Jackson, were charged with possessing heroin and cocaine with intent to distribute.[1] In the remaining counts, defendant Thomas Griffin was charged with possession of heroin and cocaine with intent to distribute, carrying a firearm during the commission of a felony,[2] and being a convicted felon in possession of a firearm.[3] All three defendants filed motions for the suppression of evidence. An evidentiary hearing was conducted on the motions to suppress, and the Court made certain findings of fact and law, reserving final decision on the motions for further study.

The sequence of events leading to the arrest of the three defendants and the seizure of the evidence sought to be suppressed was found on the record to have occurred as follows. Defendant Antoinette Griffin, in possession of an airplane ticket, went through the security gate at Detroit Metropolitan Airport with two suitcases, which were scanned by the X-ray machine. The X-ray picture disclosed an "unidentified mass" in one of the bags. The security guard opened the bag and identified the mass as an estimated $20,000 in U. S. currency. She immediately contacted Special Agent Paul Markonni of the Drug Enforcement Administration, who was on duty at the airport. Without disclosing his activities to Mrs. Griffin, Special Agent Markonni determined that the name on the suitcases was different from the name under which the ticket had been purchased, and he noted for future reference the description of the suitcases and of the woman passenger. He also alerted his colleagues in California to keep track of Mrs. Griffin on her arrival there, and he was informed by a reliable source that after arriving in California, Mrs. Griffin made immediate contact with people known to be involved in the narcotics trade.

Subsequently, law enforcement officers in California lost contact with Mrs. Griffin. Special Agent Markonni therefore asked to be notified by the airlines if a person traveling under the name of Hood (the name under which the ticket to California had been purchased) should return by air to Detroit. He was notified that such a passenger was on a flight back to Detroit sometime after midnight on June 15, 1975. Shortly after receiving that information, Special Agent Markonni observed Mrs. Griffin disembark from a Los Angeles flight in Detroit, carrying one suitcase. She was met at the gate by defendant Thomas Griffin, whom she embraced. Markonni observed her then go into a ladies restroom. At the same time, he observed defendant Linda Jackson, who had also been at the gate but who had not met anyone, enter the ladies restroom. The Griffins then proceeded together to a lounge where they sat down, while Linda Jackson entered the baggage claim area. Markonni recognized a suitcase in the baggage claim area that was of the same description as the second one that Mrs. Griffin had taken to California.

The Griffins then proceeded out of the terminal building with one suitcase, leaving Linda Jackson near the other bag that Markonni had identified as similar to Mrs. Griffin's second suitcase. They were observed to enter an automobile that had been parked near the terminal and begin to drive away. With the aid of two Wayne County Sheriff's Department officers, Markonni then arrested both the Griffins and Linda Jackson and seized the second suitcase from the possession of a skycap. The automobile the Griffins were in at the time of their arrest and both suitcases were subsequently searched. Narcotics were found in both the suitcase taken from the skycap and the car, and firearms were found in the car.

On the basis of those findings of fact, this Court concluded on the record that there was probable cause to arrest Antoinette Griffin, but that probable cause was lacking for the arrest of Thomas Griffin. The Court also found that there was a valid

1. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2.

2. 18 U.S.C. 924(c)(2).

3. 18 U.S.C.App. § 1202(a)(1).

basis to arrest Linda Jackson, and that the seizure of the second suitcase was proper because there was probable cause to believe it contained contraband, and the exigencies of the situation made obtaining a search warrant impractical.

The Court reserved for further consideration the following three issues: (1) The legality of the use by the DEA agent of information obtained by the airport security X-ray procedures; (2) the legality of the search of the suitcase once it had been seized; and (3) the suppression of the evidence obtained through the search of the car.

### The Initial Airport Search

■ The propriety of the security guard's passing on to the DEA information obtained through the X-ray machine was challenged only by defendant Linda Jackson. Linda Jackson was not present at the time of that search and has not been charged with possession of the evidence obtained as a result of that search. In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Supreme Court enunciated the rule that standing to contest the validity of a search is not present where the defendants

> "(a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." 411 U.S. at 229, 93 S.Ct. at 1569, 36 L.Ed.2d at 214.

The Court quoted from *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176, 187 (1969), that

> "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247

(1968); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)."

Defendant Jackson thus lacks standing to assert the illegality of the search of Mrs. Griffin's bag. No objection to that search has been raised by Mrs. Griffin. Therefore, the propriety of the initial search and the passing on of the information thereby obtained to Special Agent Markonni need not be considered here.[4] Defendant Jackson's motion to suppress will be denied.

### The Opening of the Suitcase

■ The case law is uniform in holding that it is proper to open containers such as suitcases seized incident to a valid arrest. *United States v. Frick*, 490 F.2d 666 (C.A.5 1973); *United States v. Burch*, 471 F.2d 1314 (C.A.6 1973); *United States v. Kaye*, 492 F.2d 744 (C.A.6 1974); *United States v. Lugo-Baez*, 412 F.2d 435 (C.A.8 1969); *United States v. Buckhanon*, 505 F.2d 1079 (C.A.8 1974); *United States v. Mehciz*, 437 F.2d 145 (C.A.9 1971); *United States v. Maynard*, 439 F.2d 1086 (C.A.9 1971); *United States v. Battle*, 166 U.S.App.D.C. 396, 510 F.2d 776 (1975). The Sixth and District of Columbia Circuits have held that the fact that the search is not contemporaneous with the arrest does not render the search improper, as long as the police would have had the right to search the suitcase at the time of the arrest. *United States v. Kaye*, supra, and *United States v. Battle*, supra.

The circumstances under which the search of a suitcase is proper as incident to an arrest and seizure were set out by the Sixth Circuit in *United States v. Kaye*, supra. The court there held that, under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), where the suitcase was within the arrestee's "immediate control", meaning the area from within which he or she might gain possession of a weapon or destructible evidence, the search would be proper both at the time of the arrest and subsequently. The *Kaye* court relied on *United States v. Robinson*, 414

---

4. By basing the decision on the issue of standing, the Court is not suggesting that either the observation of the money or the use made of the information thus obtained was improper.

182

U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973):

"It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973)." 492 F.2d 744, 746.

Reading those two cases together, the *Kaye* court relied for authority for both the seizure and the search of the suitcase on an exception to the warrant requirement arising out of the necessity for the arresting officers to secure weapons and evidence that might be within the control of the arrestee. This exception to the warrant requirement is apparently not subject to the same strictures which have troubled other courts in the context of warrantless searches conducted under other exceptions to the warrant requirement. For example, the Fifth and Second Circuits have considered whether the scope of the so-called "exigent circumstances" exception is limited by the nature of the exigent circumstances which in a particular case create the exception to the seizure of the article, without automatically extending to a search of the article seized. The Fifth Circuit, in a line of recent cases, considered whether exigent circumstances sufficient to authorize a warrantless seizure of suitcases can also authorize the warrantless search of the suitcases. *United States v. Garay,* 477 F.2d 1306 (C.A.5 1973); *United States v. Lonabaugh,* 494 F.2d 1257 (C.A.5 1973); and *United States v. Anderson,* 500 F.2d 1311 (C.A.5 1973), all held that where the seizure of the suitcase was separate in space from but contemporaneous with the arrest of the defendant, the exigencies permitting the warrantless seizure would not permit the officers to conduct a warrantless search, since the officers had control of the suitcases, and their contents were no longer subject to any potential action by the defendant. Subsequent to those cases, the Fifth Circuit held en banc that where the defendant is not in custody, and exigent circumstances require the immediate seizure of the bags in order to prevent the defendant from destroying potential evidence, the warrantless opening of the bags is also authorized on the ground that such a search is no greater an intrusion on the defendant's Fourth Amendment rights than a seizure followed by the securing of a search warrant from the magistrate. *United States v. Hand,* 516 F.2d 472, 476 (C.A.5 1975). The *Garay, Lonabaugh,* and *Anderson* decisions were distinguished in *Hand* on the basis that in those cases the defendants were in custody at the time of the seizure of the suitcases, and the suitcases were in the secure control of the authorities, whereas in *Hand* the defendant was still at large and still had some potential control over and possessory interest in the bags. The potential mobility of the bags in *Hand* influenced the court to apply authority permitting the search of automobiles validly seized pursuant to an arrest, also on the theory that such a procedure creates no greater an intrusion than seizure pending the securing of a warrant for the search of the car, citing *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

In *United States v. Johnson,* 467 F.2d 630 (C.A.2 1972), the Second Circuit held that in the context of a search for weapons conducted while the police were in hot pursuit of the defendant, it was permissible to open a suitcase for which there was probable cause to believe that there were guns inside. Again, the court explained that suitcases were similar to automobiles in terms of their mobility, and thus the exigent circumstances extended to the search as well as the seizure of the article.

■ The need to find authorization for the warrantless search once the seizure has been made has not been recognized by the courts that have considered this problem, where the initial seizure of the suitcase was, as in the instant case, incident to an arrest under *Chimel v. California.* In this case the suitcase was seized contemporaneously with the arrest of Linda Jackson, and it was

taken from the area within her physical control, albeit not from her own hands. On the authority of *Kaye*, the search of the suitcase as well as its seizure must be upheld. The motion to suppress the evidence thus obtained will therefore be denied.

### The Search of the Car

■ Warrantless automobile searches are authorized as incident to a valid arrest, *Chimel v. California*, supra, or where there is probable cause to believe the automobile contains contraband. *Chambers v. Maroney*, supra. In this case both the occupants of the automobile were arrested, one validly and one invalidly. The car was then searched. Thomas Griffin, the defendant against whom the evidence thus obtained is relevant, challenges the admissibility of the fruits of that search on the basis of the illegality of his arrest. In its simplest form, the problem is whether evidence seized pursuant to both an invalid arrest, and a valid arrest plus probable cause to believe there was contraband present, is admissible against the party invalidly arrested.[5]

■ The exclusionary rule for evidence illegally seized has developed as the primary means of implementing the Fourth Amendment protections against unreasonable searches and seizures and Fifth Amendment protections against self-incrimination. In the ordinary course, evidence seized pursuant to an invalid arrest is suppressed as the only workable sanction against the illegality of the arrest. Two principal interests are cited by the courts with respect to the exclusionary rule: The deterrence of improper police conduct; and the safeguarding of judicial integrity by not permitting the courts to be party to the use of the fruits of an invasion of constitutional rights. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Many cases deal with the question of admissibility of evidence where, with respect to a single defendant, there is a taint of illegality, but also an independent valid authorization for the seizure of the evidence. For example, where a coerced confession provides the initial lead in the case, its taint with respect to subsequently discovered evidence can be overcome where the discovery of the further evidence is through the use of independent sources rather than through the exploitation of the primary illegality. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, the fact of an invasion of the defendant's constitutional rights does not require exclusion of the evidence where the evidence sought to be introduced is not the "fruit of the poisonous tree". In *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the seminal case on the "fruits" doctrine, after noting that:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall be used before the Court but that it shall not be used at all." 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed. at 321;

the Court added:

"Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." Id.

■ Similarly, where the causal connection between the illegally obtained evidence and the proposed proof is sufficiently attenuated, even absent an independent source the proof has been held admissible under the doctrine of "attenuation". *Nardone v.*

5. At the outset this case must be distinguished from instances in which the police attempt to validate an otherwise invalid seizure by improperly extending the scope of an otherwise valid seizure. There is no evidence here that the arrest of Antoinette Griffin was made for the purpose of obtaining the evidence against Thomas Griffin. The police were mistaken in their assessment of the probable cause present with regard to Thomas Griffin, but nothing in the record indicates anything more than misjudgment with respect to him. Once the decision to arrest both the Griffins had in good faith been made, the search of the automobile proceeded as a natural consequence of the joint arrest.

*United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed.2d 207 (1939). Again, the invasion of a constitutional right does not require the exclusionary sanction where the connection between the constitutional infringement and the evidence sought to be introduced is sufficiently indirect.

Two recent decisions further illustrate the principle of admissibility of evidence obtained via two routes, one of which was legal, and the other illegal with respect to a single defendant. In *United States v. Boisvert,* USAF Ct.Mil.Rev. 3/2/76, reported at 18 Cr.L. 2571, 3/31/76, an illegal seizure of the defendant's car keys without advising him of his rights or permitting him to consult an attorney was found not to require exclusion of the evidence of narcotics subsequently seized from the car because probable cause to search the car arose independently when a specially trained security dog alerted the officers to the presence of narcotics in the car. The court held that by turning over the keys the defendant had in fact merely facilitated what would have happened anyway.

In *Roberts v. Ternullo,* 407 F.Supp. 1172 (U.S.D.C., E.N.Y.1976), reported at 18 Cr.L. 2415, documents which were elsewhere filed as public records were illegally seized. A motion to suppress was denied because the records would undoubtedly have been uncovered independently in the course of the massive investigation being undertaken.

In our case, rather than having one instance of illegal police conduct followed by an independent source leading to the same evidence, we have an illegal police act with respect to one defendant, concurrent with a legal act with respect to a second defendant, both of which acts lead to the discovery of the same body of evidence. At the same time there is also probable cause, independent of the presence of the two defendants, to believe that the car contained contraband.

The element of concurrence of the legal and the illegal acts is really not the factor which distinguishes this case from the authority cited above. Rather, it is the fact that two people are involved that causes the difficulty in these circumstances. If Thomas Griffin had been arrested alone in the car, and if no other valid reason to search the car had existed, then he would have had a clear right to suppress the evidence thus obtained. Why should the fact that Antoinette Griffin's Fourth Amendment rights were not violated by *her* arrest have any effect on the vindication via the exclusionary rule of Thomas Griffin's rights? The converse would not be true, *viz.* that as to Antoinette Griffin evidence seized in violation of Thomas Griffin's rights would be excludable. The Fourth Amendment creates personal rights that are enforceable only by the party whose rights have been violated. *Brown v. United States,* supra.

The answer seems to lie in the peculiar nature of the exclusionary rule. The rule represents not a simple means of vindicating Fourth Amendment rights by letting the wrongdoer go free because the constable has blundered, *Mapp v. Ohio,* 367 U.S. 643, 659, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081, 1092 (1961), but a much more complex balancing of the conflicting public interests in deterring illegal police conduct, protecting the integrity of the courts, and encouraging effective investigation and apprehension of criminal conduct. In *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), the Supreme Court in passing noted the way this balancing works in the simpler context of the exclusion of the fruits of an illegal confession. The Court noted:

> "The exclusion of an illegally procured confession and of any testimony obtained in its wake deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government's illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law." 392 U.S. 219, n. 10, 88 S.Ct. 2008, 20 L.Ed.2d 1047.

Where, as here, the evidence sought to be introduced would have been available to the

government regardless of the illegality with respect to Thomas Griffin, the exclusion of the evidence would deprive the government of evidence to which it does have a lawful claim, and it would upset the balance of interests adopted by the *Harrison* court.

Thomas Griffin's motion to suppress the evidence seized from the automobile must therefore be denied.